United States Court of Appeals,

Fifth Circuit.

No. 93-3289.

In the Matter of TOYOTA JEFFERSON, INC., Debtor.

Leonard LAKER, Chapter 7 Trustee for Bankruptcy ESTATE OF TOYOTA OF JEFFERSON, Appellant,

v.

Francelle VALLETTE, Executrix for the Succession of Amelia Schexnayder Normand, Appellee.

Feb. 28, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

Leonard Laker, as trustee of the bankruptcy estate of Toyota of Jefferson, Inc., sought to recover for the estate three allegedly preferential payments of money from the debtor to one of its creditors, Amelia Schexnayder Normand, under 11 U.S.C. § 547. The court below held that all three payments were voidable preferences, but it nevertheless permitted him to recover only the final transfer. This appeal followed.

## I. BACKGROUND

### A. *Facts*

Louis J. Normand, Sr., was the president and majority shareholder of Toyota of Jefferson, Inc. (Toyota). Amelia Schexnayder Normand, now deceased, was the mother of Louis Normand. Francelle Vallette is the testamentary executrix for the succession of Amelia Normand.

1

The dispute in the instant case involves a series of transactions between Toyota and Amelia Normand in 1989 and 1990. On May 30, 1989, Amelia Normand gave Toyota four checks totalling $30,830.75. Toyota repaid this amount by two checks dated October 24, 1989, and Amelia Normand deposited the checks into a joint account she shared with her son on October 25, 1989.

On January 8, 1990, Amelia Normand transferred $82,993 to Toyota by check, which was deposited in Toyota's account the next day. Toyota returned this amount to Amelia Normand in four checks dated January 12-19, 1990. She deposited these checks into her account over the period from January 17-26, 1990.

On February 22, 1990, Amelia Normand transferred $90,169 to Toyota by check. Toyota repaid this amount over time, with seven checks dated February 22, 1990, and two checks dated February 24, 1990. Amelia Normand deposited the checks from Toyota over the period from March 1-14, 1990.

## B. *Procedural History*

Toyota filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana on September 28, 1990. Leonard Laker was appointed as trustee for Toyota's estate ("the bankruptcy trustee"), and he remained trustee after the case was converted into a Chapter 7 proceeding on November 13, 1990. On October 23, 1991, the bankruptcy trustee filed an adversary proceeding in the bankruptcy court against Vallette in her capacity as executrix for the succession of Amelia Normand,

seeking to avoid and recover the payments made by Toyota to Amelia Normand outlined above (totalling $203,992.75) under 11 U.S.C. § 547.

On May 26, 1992, the district court granted Vallette's unopposed motion to withdraw reference of the adversary proceeding from the bankruptcy court. After a telephone conference, the parties consented to a bench trial before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 925 F.2d 853, 855 (5th Cir.1991) (noting that a magistrate judge acting under § 636(c) may conduct a trial and enter judgment for the court in any civil matter referred to it by the district court if the parties consent). Trial was held on February 25, 1993. In its order and reasons filed on March 31, 1993, the court held that the three sets of payments from Toyota to Amelia Normand from October 25, 1989, through March 14, 1990, were preferential payments within the meaning of 11 U.S.C. § 547(b). The court considered and rejected Vallette's arguments that the "contemporaneous exchange" and "ordinary course of business" exceptions of § 547(c)(1) and (c)(2) applied to the transactions. The court further held, however, that only the final preferential payment, for $90,169, could be avoided and recovered by the bankruptcy trustee, for the following reasons:

> In sum, the Magistrate Judge finds that these payments from Debtor to Creditor may be recovered by the bankruptcy estate—they may be avoided. However, this was the same money being passed back and forth.
>
> The same money was borrowed and repaid three times. To allow the recovery of the total—$203,992.75—would be an unjust increase of the bankruptcy estate (and an unjust decrease of

the deceased Creditor's estate). Only the final and largest transfer from Debtor to Creditor, in the amount of $90,169.00, may be avoided.

The bankruptcy trustee timely filed his notice of appeal to this court, appealing the portion of the order limiting his recovery of the preferential payments to $90,169.

## II. STANDARD OF REVIEW

We review a judgment rendered by a magistrate pursuant to 28 U.S.C. § 636(c) as we would a judgment rendered by a district judge. *See* 28 U.S.C. § 636(c)(3); *James v. Hyatt Corp.,* 981 F.2d 810, 812 (5th Cir.1993). Thus, we review issues of law de novo and findings of fact under the clearly erroneous standard. *James,* 981 F.2d at 812.

## III. ANALYSIS

The sole issue for our decision is whether the court below properly limited the bankruptcy trustee's recovery to $90,169, the amount of the last preferential payment from Toyota to Amelia Normand.[1] The bankruptcy trustee argues that the court below erred in limiting the bankruptcy estate's recovery from Amelia Normand to less than the full $203,992.75 sought. In the trustee's view, once the court below decided that neither § 547(c)(1) nor (c)(2) applied

---

[1]The appellee, Vallette, argues in her brief that the court below erred in holding that the "contemporaneous exchange" and "ordinary course of business" exceptions did not apply. We decline to consider her arguments because, absent a cross appeal, the appellee cannot attack the decision of the court below with a view either to enlarging her own rights thereunder [or lessening the rights of her adversary.] *Morley Constr. Co. v. Maryland Casualty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 327, 81 L.Ed. 593 (1937); *Securities and Exch. Comm'n v. AMX, Int'l, Inc.,* 7 F.3d 71, 74 n. 4 (5th Cir.1993); *Speaks v. Trikora Lloyd P.T.,* 838 F.2d 1436, 1439 (5th Cir.1988).

4

to the preferential payments, the court was bound to award the bankruptcy estate the full amount of the preferential payments. Vallette argues, however, that the "subsequent advance" exception found in § 547(c)(4) supports the decision by the court below. That section of the Bankruptcy Code provides as follows:

> (c) The trustee may not avoid under this section a transfer—
>
> * * * * * *
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> > (A) not secured by an otherwise unavoidable security interest;  and
> >
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

11 U.S.C. § 547(c)(4).  Although the court below did not expressly rely on § 547(c)(4), Vallette is entitled to offer alternative bases for upholding the judgment, provided there is record support for her arguments.  *Cox v. Sunbelt Sav. Ass'n,* 896 F.2d 957, 959 n. 2 (5th Cir.1990).

We consider first the role § 547(c)(4) was intended to play by the drafters of the Code.  The exception "most obviously applies to revolving credit relationships."  Raymond T. Nimmer, *Security Interests in Bankruptcy:  An Overview of Section 547 of the Code,* 17 HOUS.L.REV. 289, 299 (1980).  Two policy considerations support the exception.  First, without the exception, a creditor who continues to extend credit to the debtor, perhaps in implicit reliance on prior payments, would merely be increasing his

bankruptcy loss. *Id.* at 300. Second, the limited protection provided by the subsequent advance rule encourages creditors to continue their revolving credit arrangements with financially troubled debtors, potentially helping the debtor avoid bankruptcy altogether. *Id.* at 300-01. Protecting the creditor who extends "revolving credit" to the debtor is not unfair to the other creditors of the bankrupt debtor because the preferential payments are replenished by the preferred creditor's extensions of new value to the debtor. *Kroh Bros. Dev. Co. v. Continental Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.),* 930 F.2d 648, 652 (8th Cir.1991).

We turn next to the elements of the § 547(c)(4) exception itself. Commentators have noted that "[t]here are two keys to the application of (c)(4). The creditor must have given (1) "new value' and must have done so (2) *after* the preferential transfer." 1 DAVID G. EPSTEIN ET AL., BANKRUPTCY § 6-34, at 628 (1992). Two other caveats must be observed. The new value given by the creditor must not be secured by "an otherwise unavoidable security interest," § 547(c)(4)(A), and the debtor must not have made "an otherwise unavoidable transfer to or for the benefit of such creditor" on account of the new value, § 547(c)(4)(B).

The transfers in this case may be summarized as follows.

Preferential
Date Payment    New Value
Oct. 1989 $30,830.75
Jan. 9, 1990        $82,993.00
Jan. 12-19, 1990    $82,993.00

6

Feb. 1990      $90,169.00

Mar. 1990 $90,169.00

-----

Under the "net result rule," which was applied by some courts under pre-Code bankruptcy law, bankruptcy courts would simply total the preferential payments and the advances of new value and offset them against each other.  1 EPSTEIN, *supra,* at 629.  Because § 547(c)(4) requires the new value to be given by the creditor *after* the preferential transfer to the creditor, its scope is narrower in operation than the net result rule.  *Id.;  see also Waldschmidt v. Ranier (In re Fulghum Constr. Corp.),* 706 F.2d 171, 174 (6th Cir.) ("Congressional  metamorphosis  has  transformed  the  judicially created  net  result  rule  into  what  may  be  characterized  as  a subsequent  advance  rule...."), *cert. denied,* 464  U.S.  935,  104 S.Ct.  342,  78 L.Ed.2d 310 (1983).

The bankruptcy trustee argues that none of the preferential transfers made by Toyota qualify for the § 547(c)(4) exception "because [Toyota] repaid all the funds that Amelia Normand lent it. There was no subsequent advance by Amelia Normand which [Toyota] did not repay."  Phrased another way, the bankruptcy trustee's argument is that the final preferential payment of $90,169 destroyed Amelia Normand's ability to rely on § 547(c)(4) to retain the first two preferential payments.

We disagree with the bankruptcy trustee's interpretation of § 547(c)(4), believing it to be contrary to the statute's plain language.  As an aid to our analysis, we may compare the instant

7

case with the following hypothetical.

```
          Preferential
     Date Payment    New Value
     Oct. 1989 $30,830.75
     Jan. 9, 1990          $82,993.00
     Jan. 12-19, 1990     $82,993.00
     Feb. 1990        $90,169.00
```

-----

It is clear that § 547(c)(4) would prevent the bankruptcy trustee from setting aside either preferential payment in this hypothetical. *See Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.),* 902 F.2d 257, 258-59 (4th Cir.1990); *Boyd v. The Water Doctor (In re Check Reporting Servs., Inc.),* 140 B.R. 425, 439 (Bankr.W.D.Mich.1992). Each preferential payment has effectively been returned to the estate by an even greater extension of new value by the creditor. The transactions have not harmed the other creditors of the bankruptcy estate, because they have occasioned no diminution to the estate; indeed, they have augmented it by almost $60,000. *See In re Kroh Brothers,* 930 F.2d at 652 ("[T]he relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate."). Of course, if a creditor has retained an unavoidable security interest in an extension of new value, or if the debtor has subsequently repaid the new value by means of "an otherwise unavoidable transfer," § 547(c)(4)(A) and (B) prevent the creditor from relying on the exception because no effective replenishment of the estate has occurred.

8

We hold that the existence of the final preferential payment in this case does not allow the bankruptcy trustee to overcome Vallette's § 547(c)(4) defense to avoidance of the first two preferential payments. In the words of one commentator:

> The prevailing interpretation seems to be the correct one. If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, *and if these subsequent payments are themselves voidable as preferences* (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the *earlier* voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under section 547, because the goods and services were given C.O.D. rather than on credit, or because the creditor has a defense under section 547(c)(1), (2), or (3). In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 VAND.L.REV. 713, 788 (1985) (emphases added) (footnotes omitted); *see also* 1 EPSTEIN, *supra,* at 632 ("[T]he debtor's payment of the new value does not affect the application of (c)(4) if the payment itself is avoidable."). The final preferential payment in the instant case is voidable; § 547(c)(4) offers Vallette no solace because the $90,169 payment was not followed by an extension of new value. Once this payment is avoided, the situation is identical to the hypothetical presented, *supra,* and fits neatly within Professor Countryman's analysis. Many bankruptcy courts have adopted this approach to § 547(c)(4). *See, e.g., Brown v. Shell Canada, Ltd. (In re Tennessee Co.),* 159 B.R. 501, 518 (Bankr.E.D.Tenn.1993); *Successor Comm. of Creditors*

*Holding Unsecured Claims v. Bergen Brunswig Drug Co. (In re Ladera Heights Community Hosp., Inc.),* 152 B.R. 964, 967-68 (Bankr.C.D.Cal.1993); *Hyman v. Stone Lumber Co. (In re Winter Haven Truss Co.),* 154 B.R. 592, 596 (Bankr.M.D.Fla.1993); *Mosier v. Ever-Fresh Foods Co. (In re IRFM, Inc.),* 144 B.R. 886, 889-93 (Bankr.C.D.Cal.1992); *Allied Companies, Inc. v. Broughton Foods Co. (In re Allied Companies, Inc.),* 155 B.R. 739, 743-44 (Bankr.S.D.Ind.1992); *In re Check Reporting Services,* 140 B.R. at 432, 439. The subsequent advances following the first two preferential payments were repaid, but with preferences that were not "otherwise unavoidable." The result reached by the court below is therefore correct.[2]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the court below is AFFIRMED.

---

[2]Some of our sister circuits have, in dicta, described § 547(c)(4)(B) as requiring the subsequent advance to go "unpaid." *See In re Kroh Brothers,* 930 F.2d at 652; *New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.),* 880 F.2d 679, 680 (3d Cir.1989); *Charisma Inv. Co., N.V. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.),* 841 F.2d 1082, 1083 (11th Cir.1988); *In re Prescott,* 805 F.2d 719, 731 (7th Cir.1986). Although this description may be an adequate shorthand description of § 547(c)(4)(B), a more complete statement of the (c)(4) exception would be that a creditor who raises it has the burden of proving that (1) new value was extended after the preferential payment sought to be avoided, (2) the new value is not secured with an otherwise unavoidable security interest, and (3) the new value has not been repaid with an otherwise unavoidable transfer. *Cf. In re Prescott,* 805 F.2d at 731 ("The creditor that raises a "subsequent advance' defense has the burden of establishing that new value was extended, which remains unsecured and unpaid after the preferential transfer.").