In re IRFM, INC., a California Corporation, formerly d/b/a Irvine Ranch Farmers Market, Debtor.

Robert P. MOSIER, Chapter 7 Trustee, Plaintiff–Appellant,

v.

EVER–FRESH FOOD COMPANY, Defendant–Appellee.

No. 93–56228.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1995.

Decided April 5, 1995.

Dennis F. Fabozzi, Fabozzi, Prenovost & Normandin, Santa Ana, CA, for plaintiff-appellant.

Gerald Lee Bolinger, Santa Ana, CA, for defendant-appellee.

Before: BROWNING, BOOCHEVER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Robert P. Mosier, Chapter 7 Trustee, appeals the district court's grant of summary judgment in favor of creditor Ever–Fresh Food Company ("Ever–Fresh"). Mosier filed this action seeking recovery of $72,-895.17 in preferential transfers from the Debtor, IRFM, Inc., to Ever–Fresh. The district court, affirming the bankruptcy court, held that Ever–Fresh was entitled to a full new value offset under section 547(c)(4), notwithstanding the fact that the new value did not remain unpaid.

The district court had jurisdiction pursuant to 28 U.S.C. § 158(a) and we have jurisdiction pursuant to 28 U.S.C. § 158(b)(1). We affirm the judgment of the district court.

I

IRFM was a retail grocery with several stores in the Southern California area. The grocery specialized in selling high quality fresh meats and produce to its customers, and charged the customers accordingly. IRFM expanded its operations to other areas of Southern California where the demand for high quality, high priced groceries was not great. As a result, IRFM suffered substantial losses.

Ever–Fresh was a supplier of fresh cheese and dairy products to IRFM. Ever–Fresh delivered the goods to IRFM on a weekly basis. IRFM often paid Ever–Fresh for these goods more than seven days after delivery, frequently writing one check for a series of invoices, and not in accordance with the terms of payment or industry standards.

In July, 1988, IRFM filed a voluntary Chapter 11 bankruptcy petition. This petition was converted to one under Chapter 7 in October 1989. The appointment of Mosier as trustee became final in November 1989.

During the ninety day period immediately prior to bankruptcy, IRFM and Ever–Fresh engaged in the following transactions:[1]

| CHECK DATE | PAYMENT AMOUNT | GOODS SHIPPED |
|---|---|---|
| April 25 | $18,475.86 | |
| | | $18,849.16 |
| May 2 | $18,095.66 | |
| | | $33,063.18 |
| May 11 | $16,197.93 | |
| | | $16,197.93 |
| May 16 | $14,492.91 | |
| | | $17,280.78 |
| May 23 | $18,056.21 | |
| | | $20,590.11 |
| May 30 | $18,420.07 | |
| | | $23,056.79 |
| June 6 | $18,922.37 | |
| | | $17,436.51 |
| June 13 | $23,479.03 | |
| | | $15,967.54 |
| June 20 | $17,127.20 | |
| July 22 | | $113,566.47 |
| | $163,267.24 | $276,008.47 |

Mosier filed this action in bankruptcy court seeking to avoid and recover $72,895.17 of the payments made by IRFM to Ever–Fresh under 11 U.S.C. § 547. Mosier calculated this amount by first subtracting the total amount of the payments, $163,267.24, from $253,639.31, the amount he calculated as the total new value given by Ever–Fresh. The remainder, $90,372.07, Mosier argues is the amount of new value which remained "unpaid" at the time of bankruptcy and may be retained by Ever–Fresh. Mosier then subtracted this "unpaid" new value from the $163,267.24 in payments made by IRFM. Mosier contends that the resulting $72,895.17 is paid new value and may be avoided.[2]

---

1. These transactions represent the amount of goods shipped by Ever–Fresh between each payment by IRFM.

2. In computing the amount he seeks to avoid, Mosier erroneously states that the total amount of new value given was $253,639.31. As the table indicates, the amount of new value given was actually $276,008.47. Using this figure and

The bankruptcy court, Judge John Ryan, rejected this argument and held that Ever–Fresh was entitled to a new value offset for the entire $163,267.24. In reaching this conclusion, the bankruptcy court held that new value need not remain unpaid. *In re IRFM, Inc.*, 144 B.R. 886 (Bankr.C.D.Cal.1992). The district court affirmed this decision and granted summary judgment in favor of Ever–Fresh. Mosier now appeals.[3]

## II

■ We review de novo a grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).

## III

A trustee is empowered to challenge every transfer made by a debtor to a creditor during the ninety day period immediately prior to the filing of a bankruptcy petition. 11 U.S.C. § 547(b).[4] This avoidance power enables the trustee to protect the estate of the debtor and to ensure an equitable distribution among the unsecured creditors.

Once the trustee has established that a transfer is a preference, a creditor may assert a defense to the preference under 11 U.S.C. § 547(c). Ever–Fresh contends that it is entitled to a "new value" defense under section 547(c)(4). Ever–Fresh asserts that after each preferential transfer, it gave IRFM new value and thus may retain the transfers by IRFM. Mosier argues that in order to qualify for a new value defense a creditor must prove (1) the new value was given to the debtor after the preferential transfer; (2) that the new value is unsecured; and (3) that it remain unpaid. Ever–Fresh has satisfied the first two elements. The parties contest the operation of the third.

For support of his position, Mosier relies upon language in cases to the effect that new value must remain unpaid. While this is the literal holding of these cases, these cases did not intend to reach the result urged by Mosier in this case.[5] More importantly, Mosier's argument is contrary to both the language of section 547(c)(4) and the legislative history of

---

Mosier's method of calculating the allegedly avoidable amount, we arrive at an amount of "unpaid" new value of $112,741.23 and an allegedly avoidable amount of $50,526.01. At a hearing in the bankruptcy court on this issue, Mosier conceded that the $276,008.47 figure was correct and also conceded that the preference amount was approximately $50,000. Mosier's miscalculation is irrelevant to our decision, however, because we hold that Ever–Fresh is entitled to a full new value offset.

3. Ever–Fresh asserts an equitable argument that Mosier is estopped from raising this issue on appeal because he stipulated to the approach used by the bankruptcy court to calculate the new value offset. Given the confusion in the courts over the proper interpretation of section 547(c)(4), we address this appeal on the merits.

4. In order to establish a preference a trustee must show: 1) that there has been a transfer, 2) of the debtor's property, 3) to or for the benefit of a creditor, 4) for or on account of an antecedent debt, 5) made while the debtor was insolvent, 6) within 90 days before bankruptcy, 7) and the effect of the transfer was to give the creditor more than he would have otherwise received in a Chapter 7 distribution. 11 U.S.C. § 547(b).

For purposes of summary judgment, Mosier and Ever–Fresh agree that the transfers made by IRFM to Ever–Fresh constitute preferences under § 547(b).

5. The result which Mosier urges may be best understood by an example. Assume IRFM made a preferential transfer of $50,000 to Ever–Fresh sixty days prior to filing bankruptcy. Subsequent to this transfer, Ever–Fresh gave IRFM new credit valued at $100,000. If bankruptcy were filed on this day, Ever–Fresh would be able to successfully assert a new value defense and retain the $50,000 transferred by the debtor. However, if one week before bankruptcy IRFM made another transfer to Ever–Fresh of $50,000, under Mosier's rule, Mosier would be able to avoid the entire $100,000 transfer by the debtor. This result follows because none of the new value remains "unpaid."

Under this rule, Mosier may "double count" the second preferential transfer. First, Mosier may properly avoid the second $50,000 transfer because Ever–Fresh transferred no new value subsequent to this preference. Second, Mosier may also use this second transfer to "pay" for the new value, allowing Mosier to recoup the first $50,000 which had previously been subject to a valid new value defense.

At oral argument, Mosier argued that this was not the result urged. However, by totaling new value, subtracting the preferential transfers and then allowing a new value defense for only the amount left "unpaid," this is the exact result that would occur.

the Bankruptcy Code. The following analysis of the language of section 547(c)(4) demonstrates why Mosier's position is erroneous.

## A

Section 547(c)(4) of the Bankruptcy Code provides:

> The trustee may not avoid under this section a transfer which—
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
>> (A) not secured by an otherwise unavoidable security interest; and
>>
>> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

Courts and commentators agree that the exception contains two key elements. First, the creditor must give unsecured new value and, second, this new value must be given *after* the preferential transfer. *See In re Fulghum Constr. Corp.*, 706 F.2d 171, 172 (6th Cir.) *cert. denied*, 464 U.S. 935, 104 S.Ct. 342, 343, 78 L.Ed.2d 310 (1983). The majority of courts have also adopted a short hand approach to section 547(c)(4)(B) and hold that section 547(c)(4) contains a third element, that the new value must remain unpaid. The Eighth Circuit recently followed this approach in *In re Kroh Bros. Dev. Co.*, 930 F.2d 648, 653 (8th Cir.1991) (creditor who has been paid for the new value by the debtor may not assert a new value defense). *See also In re New York City Shoes, Inc.*, 880 F.2d 679, 670 (3d Cir.1989); *In re Jet Florida Sys., Inc.*, 841 F.2d 1082, 1083 (11th Cir. 1988); *In the Matter of Prescott*, 805 F.2d 719, 731 (7th Cir.1986).

The rationale for this position is (1) if new value has been repaid by the debtor, the estate has not been replenished and; (2) the creditor is permitted the double benefit of a new value defense and the repayment of the new value. *See Kroh Bros.*, 930 F.2d at 652. However, focusing only on the issue of whether the new value is unpaid may lead to some absurd results, as Mosier's position demonstrates. As a result, an emerging

trend has developed where a few courts have reached the contrary result and hold that new value need not remain unpaid. *See In re Ladera Heights Comm. Hosp., Inc.*, 152 B.R. 964, 968 (Bankr.C.D.Cal.1993).

However, an even more recent trend has developed where courts and commentators have rejected the short hand approach and have undertaken a more thorough analysis of the language of section 547(c)(4)(B). These cases reason that the numerous decisions focusing on the narrow issue of whether the new value remains unpaid are incomplete and inaccurate. *In the Matter of Toyota of Jefferson, Inc.*, 14 F.3d 1088, 1093 n. 2 (5th Cir.1994); *In re PNP Holdings Corp.*, 167 B.R. 619, 629 (Bankr.W.D.Wash.1994); *In re Check Reporting Servs., Inc.*, 140 B.R. 425, 431–34 (Bankr.W.D.Mich.1992).

According to this view, the proper inquiry directed by section 547(c)(4)(B) is whether the new value has been paid for by "an otherwise unavoidable transfer." *In the Matter of Toyota of Jefferson*, 14 F.3d at 1093 n. 2. This inquiry follows the *Kroh Bros.* rationale that a creditor should not get double credit for an advance of new value. However, instead of barring the new value defense altogether anytime new value has been repaid, this approach allows the new value defense if the trustee can recover the repayment by some other means.

This analysis fully comports with the statute's plain language. While the phrase "the debtor did not make an otherwise unavoidable transfer" is complicated, it is not ambiguous and its meaning is easily discernible. *See Check Reporting Servs.*, 140 B.R. at 434–36 (conducting an exhaustive analysis of the phrase "did not make an otherwise unavoidable transfer"). As one commentator has explained:

> If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, *and if these subsequent payments are themselves voidable as preferences* (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the *earlier* voidable preference. On the other hand,

the debtor's subsequent payments might not be voidable on any other ground and not voidable under section 547, because the goods and services were given C.O.D. rather than on a credit, or because the creditor has a defense under section 547(c)(1), (2), or (3). In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 788 (1985) (emphasis added and footnotes omitted) (quoted in *In the Matter of Toyota of Jefferson, Inc.*, 14 F.3d at 1092–93).

■ . We agree with this analysis and hold that a new value defense is permitted unless the debtor repays the new value by a transfer which is otherwise unavoidable.

## B

■ In addition to its consistency with the language of the statute, this approach meets the policy underlying preference actions. *Check Reporting Servs.*, 140 B.R. at 437. The purpose of section 547 is twofold. First, enabling a trustee to avoid preferential transfers allows the trustee to secure equality of distribution among the unsecured creditors by preventing a debtor from benefiting a particular creditor on the eve of bankruptcy. Second, the new value exception encourages creditors to continue to do business with financially troubled debtors, with an eye toward avoiding bankruptcy altogether. *Id.*

The rule for which Mosier argues would discourage creditors from having any dealings with a financially troubled debtor. For instance, Ever–Fresh could have sold the goods to another purchaser and been able to retain the payment for those goods. Instead, Ever–Fresh would not only be required to forfeit *all* payments made by IRFM during the preference period, but Ever–Fresh would also lose the new value extended to the debtor. Mosier's rule also makes the creditor worse off vis-a-vis the other creditors. By refusing to permit the creditor to receive some benefit for the transfer of new value,

the proposed rule would put the creditor in a worse position than those creditors who chose not to deal with the debtor.

## IV

■ We must now decide the proper calculation of the new value offset. The district court adopted the following approach:

| CHECK DATE | PAYMENT AMOUNT | GOODS SHIPPED | PREFER-ENCE |
|---|---|---|---|
| April 25 | $18,475.86 | | $18,475.86 |
| | | $18,849.16 | |
| May 2 | $18,095.66 | | $18,095.66 |
| | | $33,063.18 | |
| May 11 | $16,197.93 | | $16,197.93 |
| | | $16,197.93 | |
| May 16 | $14,492.91 | | $14,492.91 |
| | | $17,280.78 | |
| May 23 | $18,056.21 | | $18,056.21 |
| | | $20,590.11 | |
| May 30 | $18,420.07 | | $18,420.07 |
| | | $23,056.79 | |
| June 6 | $18,922.37 | | $18,922.37 |
| | | $17,436.51 | $1,485.86 |
| June 13 | $23,479.03 | | $24,964.89 |
| | | $15,967.54 | $8,997.35 |
| June 20 | $17,127.20 | | $26,124.55 |
| July 22 | | $113,566.47 | $ 0.00 |
| | $163,267.24 | $276,008.47 | $ 0.00 |

This calculation results in a full new value defense for Ever–Fresh and we accept it as correct. This approach is derived from *In re Thomas W. Garland, Inc.*, 19 B.R. 920 (Bankr.E.D.Mo.1982). Under this method, subsequent advances of new value may be used to offset prior (although not immediately prior) preferences. A creditor is permitted to carry forward preferences until they are exhausted by subsequent advances of new value.

The rationale behind this method is twofold. First, it encourages creditors to do business with financially troubled debtors. A creditor will be more likely to continue to advance new value to a debtor if all these subsequent advances may be used to offset a prior preference. If a second advance of new value carries no benefit, the creditor will be unlikely to make it. *In re Meredith Manor, Inc.*, 902 F.2d 257, 259 (4th Cir.1990). Second, this approach recognizes the fluid nature of ongoing commercial activity where a creditor looks to a debtor's entire repayment history, instead of one isolated transaction, to decide whether to advance new credit. *Id.*

A contrary approach was adopted in *Leathers v. Prime Leather Finishes Co.,* 40 B.R. 248 (D.Maine 1984). Under this "transactional approach," the new value given by the creditor may be used to offset only the immediately preceding preference. Here, Mosier would be able to avoid the excess of the June 6 and June 13 transfers over the immediately subsequent advances of new value, resulting in a total recoupment of $8,997.35 from Ever–Fresh.

We reject the *Leathers* approach. First, nothing in the language of section 547(c)(4) requires this result. The statute states only that after a preferential transfer, new value must be given. *See PNP Holdings,* 167 B.R. at 627. Second, as discussed above, the *Garland* approach better satisfies the purposes and goals of the preference section.

We adopt the *Garland* approach with a few additional requirements that are necessary given our holding in section III.

 First, to calculate the new value defense, consideration must be given to whether an increment of new value has been paid for by something other than an avoidable transfer. If so, this increment of new value may not be included in calculating the amount of the new value defense.

 Second, assurance must be given that the creditor will not attempt to obtain double credit for a transfer. This requirement may be satisfied by disallowing a creditor from asserting a separate section 547(c) defense against a preference when the creditor has already used section 547(c)(4) to offset that preference.[6]

 Applying these requirements to the present case, we affirm the district court's award of the full new value offset to Ever–Fresh. Under the *Garland* test where new value may offset more than the immediately prior preference, the resulting preference amount is zero. Second, the parties agreed

that all transfers by IRFM which are challenged by Mosier are preferences under 547(b). Therefore, none of these transfers are "otherwise unavoidable." Finally, because Ever–Fresh has been granted a new value offset for each of these preferential transfers, no other preference defense is available for these same transfers.

## V

The preference section of the Bankruptcy Code requires that new value must not be repaid by an otherwise unavoidable transfer. Because the parties agree that the transfers made in this case are preferences under section 547(b), they are not "unavoidable." We conclude that Ever–Fresh is entitled to a new value defense for the entire amount of preferential transfers made by IRFM.

AFFIRMED.

---

**6.** Alternatively, a creditor may file a waiver of all other preference defenses or may also stipulate to the avoidability, other than under section 547(c)(4), of all transfers it received from the debtor except those made after the last transfer of new value. *Check Reporting Servs.,* 140 B.R. at 438.

Likewise, once a creditor has successfully asserted a defense under section 547(c)(1), (2) or (3), it may not attempt to assert a defense under section 547(c)(4) for the same preferential transfer.