**In re Petition of Len B. BLACKWELL For The ESTATE OF I.G. SERVICES LTD., Debtor in Foreign Proceeding, Debtor.**

**Len B. Blackwell, Joint Official Liquidator of I.G. Services, Ltd., Plaintiff,**

**v.**

**Jose P. Zollino and George F. Fahey, Defendants.**

**Bankruptcy No. 99–53169–C.**
**Adversary No. 00–5090–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

March 20, 2001.

**ORDER AND MEMORANDUM GRANTING DEFENDANT ZOLLINO'S JURY DEMAND**

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the Defendant Jose P. Zollino ("Zollino") Jury Demand and Statement Regarding Consent. In hopes of clarifying some of the procedural issues associated with jury demands and withdrawing the reference from a bankruptcy court, the court issues the following opinion.

## I. BACKGROUND

On February 2, 2001, Defendant Jose P. Zollino ("Zollino") filed a jury demand in the above-styled adversary proceeding. On the same day, Zollino filed a Statement Regarding Consent, indicating that he did not consent to the conduct of a jury trial by the bankruptcy court. Several days later, on February 14, 2001, Plaintiff filed his Reply to Zollino's Jury Demand and Statement Regarding Consent, acknowledging Zollino's right to a jury trial with respect to those causes of action asserted by Plaintiff that are legal in nature. Tellingly, Plaintiff's Reply acknowledged that "[g]iven that Zollino has refused to consent to a jury trial and entry of final orders by the United States Bankruptcy Court, it appears to Plaintiff that this matter will have to be tried in the District Court." Plaintiff's Reply did make one request, however: that this bankruptcy court retain jurisdiction over all pretrial matters.

## II. THE SEVENTH AMENDMENT AND JUDICIAL CODE

The Seventh Amendment of the United States Constitution provides:

In Suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by the jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. CONST., Amend. VII. The Seventh Amendment guaranties a right to trial by jury in civil matters of many types, including many matters that might arise in the course of a bankruptcy case. *See e.g., Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *In re Hashemi,* 104 F.3d 1122, 1124 (9th Cir.1996); *Matter of Texas General Petroleum Corp.,* 52 F.3d 1330, 1337–38 (5th Cir.1995); *Smith v. Dowden,* 47 F.3d 940, 942 (8th Cir.1995); *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242, 1245 (3d Cir.1994); *M & E Contractors, Inc. v. Kugler–Morris General Contractors, Inc.,* 67 B.R. 260, 266 (N.D.Tex. 1986); *In re Commercial Financial Services, Inc.,* 252 B.R. 516, 522 (Bankr. N.D.Okla.2000); *In re Weinstein,* 237 B.R. 567, 571 (Bankr.E.D.N.Y.1999). Due to the bankruptcy courts' status as non-Article III tribunals, however, the conduct of jury trials in the bankruptcy court has

always been legally troublesome. *See Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam); *Granfinanciera*, 492 U.S. at 57–59, 109 S.Ct. 2782; *Katchen v. Landy*, 382 U.S. 323, 336, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Hudson*, 170 B.R. 868, 871 (E.D.N.C.1994); *see also Matter of Clay*, 35 F.3d 190 (5th Cir.1994) (describing the conduct of jury trials as an exercise of judicial power and explaining that only Article III courts can exercise the judicial power of the United States under the Constitution); *see generally* S. Elizabeth Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment*, 72 MINN. L. REV. 967 (May 1988).

 Congress in 1994 made provision for the conduct of jury trials before a bankruptcy judge, but only with certain protections deemed constitutionally mandated, modelling the enabling legislation on a similar statute that permits magistrate judges to conduct jury trials. *See* 28 U.S.C. § 157(e); *cf.* 28 U.S.C. § 636(c)(1). One of the conditions imposed by the enabling statute is that such trials may only occur if both parties have consented to the bankruptcy judge's presiding over the trial. In addition, the bankruptcy judge in question must have been "specially designated"[1] by the district court to exercise such "jurisdiction." There are thus a variety of additional procedural hurdles which must be cleared by a party desiring to conduct a jury trial in the bankruptcy court (as opposed to the district court), in addition to those already erected by the Federal Rules of Civil Procedure for the conduct of a jury trial in *any* federal tribunal.[2]

The requirement that both parties consent to the bankruptcy court's conduct of the jury trial that one or both parties have demanded creates real opportunities for strategic behavior. When a party in a given adversary proceeding filed in a bankruptcy case first demands a jury trial and then promptly refuses to consent to the conduct of that trial before the bankruptcy court, it is a safe bet that the tactic does not grow out of a zealous devotion to constitutional principles. In the vast ma-

1. This district, like all other districts in the United States, *see United States Lines, Inc. v. American Steamship Owners Mutual Protection & Indemnity Assc., Inc. (In re United States Lines, Inc.)*, 169 B.R. 804, 814 (Bankr. S.D.N.Y.1994), has entered a general order which operates as a blanket referral of all matters that the filer indicates are "bankruptcy matters" to the bankruptcy court, such that all such matters are filed directly with the clerk of the bankruptcy court. *See* Local Rule 1001(f); Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc of the United States District Court for the Western District of Texas. In practice, therefore, the district court has no interact on with bankruptcy cases unless a bankruptcy court decision is appealed, or unless a party requests withdrawal of reference of a particular case or matter. *In re Simmons*, 205 B.R. 834, 837 (Bankr.W.D.Tex.1997).

2. A party who decides they want a jury trial must make a "timely demand." Fed. R. Civ.

P. 38(b); *see also Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1028 (5th Cir.1980). Usually, that requires a written statement simply demanding a jury trial, made within 10 days of the last active pleading filed in the case, directed to the issue for which a jury trial is requested. FED. R. CIV P. 38(b). The demand may be incorporated within a pleading, or may be in a separate document. *See BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 182 F.R.D. 335, 338 (D.D.C. 1998). Failure to timely demand a jury is treated as a waiver. FED.R.CIV.P. 38(b); *see also Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1208 (7th Cir. 1985) (holding that failure to make prompt demand for jury constitutes waiver of right to jury trial); *Mesa Petroleum*, 629 F.2d at 1028 (finding that right to jury trial is not automatic, and if it is not timely demanded, it is waived).

jority of cases, the *real* reason for demanding a jury has less to do with a party's deep and abiding respect for either the jury system or the majesty of Article III of the Constitution and much more to do with either opportunistic delay or forum-shopping. *See Matter of Grabill Corp.,* 967 F.2d 1152, 1159–60 (7th Cir.1992) (Posner, J., dissenting); *In re El Paso Refinery, L.P.,* 165 B.R. 826, 831 (W.D.Tex. 1994); *but see In re Clay,* 35 F.3d 190, 195 (5th Cir.1994) ("Reports of strategic manipulation of jury trials have been greatly exaggerated. In practice, litigants have not begun demanding more jury trials since 1989, when *Granfinanciera* established a right to jury trial in certain bankruptcy proceedings.").[3]

Although there is no hard data either way on "strategic manipulation,"a classic example of opportunistic behavior was presented in *In re Toyota of Jefferson, Inc.,* 14 F.3d 1088, 1090 (5th Cir.1994). In that case, a creditor was sued on a preference action in the bankruptcy case. The matter would have been routinely tried to the bench, the bankruptcy court presiding. However, the creditor demanded a jury trial, filed a statement that it did not consent to the conduct of a trial by jury by the bankruptcy court, then moved the district court to withdraw the reference. *Id.* The motion was granted. *Id.* Thereafter, the district court promptly referred the matter for trial before a magistrate judge,

another *non-Article III* tribunal, which then proceeded to conduct a *bench* trial to judgment, the creditor having waived its jury demand. *Id.* Evidently, the creditor was not offended by having the matter tried to a non-Article tribunal after all, so long as it was not the bankruptcy court. And, evidently, the creditor was not so offended about a bench trial rather than a jury trial after all, so long as the bench doing the trying was not the bankruptcy bench. Had the creditor *really* initiated its jury demand and accompanying non-consent out of a deeply held commitment to constitutional principle, then surely the record would have reflected at least *some* sort of protest. None is recounted, however.[4] The case is a textbook example of what happens with frequency in bankruptcy courts when the stakes are high enough—the creditor simply did not want to be before a bankruptcy judge on a question involving preferential transfers. Better to be before a tribunal less familiar with the details of the statute, and perhaps more susceptible to "equity" arguments. This sort of forum shopping, regularly excoriated in other situations, is routinely accepted in the bankruptcy context, because of the constitutional cover afforded by both the Seventh Amendment and the currently prevailing construction of Article III.[5]

Another way to almost certainly assure that a jury trial matter will not be conduct-

---

**3.** With the deepest respect for Judge Higginbotham, the author of the decision in *Matter of Clay,* there is simply no empirical data cited in his decision to support this pronouncement, and a circuit judge is sufficiently well-removed from the hurly-burly of trial practice in the bankruptcy courts to cast serious doubt about even the anecdotal value of the observation.

**4.** Perhaps the creditor was simply angling to get into district court—and did not object to trial before the magistrate judge—because an appeal from whatever decision might be rendered at trial would then proceed directly to

the circuit court. *See id.* at 1090. The most generous possible construction of the creditor's machinations, coupled with a large dollop of naivete, could perhaps support such an interpretation. If, however, that were the creditor's true motivations, then one might have expected the creditor to have been a tad more honest with the tribunals before whom it was appearing—perhaps by filing a motion with the district court seeking withdrawal of the reference, for example.

**5.** Courts have long criticized forum shopping, particularly when the "shopper" is trying to get into or out of federal court to avoid an

ed by the bankruptcy judge is to demonstrate that the matter is a *noncore* matter, and to then refuse to consent to the bankruptcy judge's entering a final judgment in any trial of the matter. 28 U.S.C. § 157(c)(1).[6] In such a scenario, the bankruptcy judge must prepare a report and recommendation to the district court, which in turn enjoys the right to *de novo* review, to the extent the findings contained in the report are challenged by a party. *See id.; see also Matter of Hipp, Inc.*, 895 F.2d 1503, 1514 (5th Cir.1990); *In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y.1994). If the trial in question had been conducted before a jury, then the bankruptcy judge's report would, of necessity, have to incorporate the jury's findings of fact. The report being subject to *de novo* review under the statute, however, means that the resulting procedure perforce violates the Seventh Amendment's prohibition on the retrial of any matter decided by a jury. *See* U.S. CONST. amend. VII; *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d. Cir.1993) ("[T]he Seventh Amendment's Reexamination Clause, which states that 'no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law,'

likely would prohibit jury trials in bankruptcy courts in non-core proceedings due to the district court's de novo review of such proceedings."); *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir.1990) (de novo review offends Seventh Amendment's prohibition on retrial of a jury's findings, other than as already provided at common law); *In re Hofmann*, 248 B.R. 79, 90 n. 21 (Bankr.W.D.Tex.2000) (same). Thus, a second "silver bullet" for assuring a "clean kill" of a trial before the bankruptcy judge is to (a) make a jury demand, (b) establish that the matter sought to be tried to a jury is non-core, and (c) refuse to consent to the entry of a final judgment by the bankruptcy judge.

It is no surprise that the defendants in this case have employed both of these strategies. The defendants have no desire to be before this court on this action, and a combination of the current statutes, the U.S. Constitution, and the jurisprudence of the courts construing those sources hands the defendants a ready and totally defensible mechanism to shop for an alternative forum. Even if a court could establish a nefarious motivation with a certainty, the statutory and constitutional antecedents give defendants sufficient cover to insulate them from any sanction.[7] That said, how-

---

alternative forum. *See Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ("[T]he twin aims of the Erie rule are: discouragement of forum-shopping and avoidance of inequitable administration of the laws."); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (holding that a plaintiff may not dodge federal court, and so engage in dreaded forum shopping, by "artful pleading"); *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993) ("[A] plaintiff cannot deny a defendant access to federal court if the actual nature of the complaint is federal."); *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir.1983) (holding that declaratory complaints filed in anticipation of a suit and used to forum shop are to be actively discouraged,

and may be considered in review of a motion to dismiss any such declaratory action); *American Automobile Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir.1939) (same).

6. Section 157(b)(2) of title 28 defines matters that are core. Everything else is non-core.

7. It bears emphasis that, even though such tactics would earn the approbation of most courts in other contexts, and might even result in sanctions in egregious cases, the self-same tactics in the bankruptcy context become simply part of the alternatives that competent counsel must consider in representing their client. Thus, if getting into a different forum is, for whatever reason, the best course counsel deems appropriate to recommend for the client, then that is the course counsel

ever, the party employing such tactics must, at the least, finish what it starts.

## III. WITHDRAWAL OF THE REFERENCE

 Even if a party successfully fires both "silver bullets" in a given adversary proceeding, the job of removing the case from the bankruptcy judge's docket is not yet complete. This is so because the bankruptcy judge has no legal or procedural means to get rid of the case. The court cannot dismiss a case otherwise appropriately entrusted to the court by the general order of reference—requesting a jury trial is an exercise of a constitutional right, but does not operate to divest the bankruptcy court of subject matter jurisdiction.[8] Nor does the court have the ability to transfer the case to the district court.[9] *See generally In re Biglari Import & Export, Inc.*, 142 B.R. 777, 780 (Bankr. W.D.Tex.1992). Because bankruptcy courts cannot refer cases back to the district court and because district judges never see cases that are filed with the bankruptcy clerk, an adversary proceeding filed and pending before the bankruptcy court will stay there regardless of the "silver bullets" a party may have fired off, unless the non-consenting party takes some additional step to first alert the district court of the problem and to then convince the district court to take the case away from the bankruptcy judge. The non-consenting party must affirmatively and *timely*[10]

must pursue, regardless the questionable ethics such a course of conduct would involve were it to be pursued in most other contexts.

8. That is to say, if the matter is otherwise within the federal court's subject matter jurisdiction under section 1334(b) of title 28, and if there is a general order of reference in place in that district, then the bankruptcy court has an obligation to hear the matter. *See In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir.1993); *Travelers Ins. Co. v. Goldberg*, 135 B.R. 788, 791–92 (D.Md.1992).

9. The general order of reference permits the district courts, in whom jurisdiction is originally placed, to "refer" matters to the bankruptcy courts for disposition, in a manner not dissimilar to the reference provisions found in section 636 of title 28, which permit referral of matters to magistrate judges. Neither bankruptcy judges nor magistrate judges have any statutory right to "refer" a matter back to the district court. This is so because, while Article III tribunals may distribute work to non-Article III tribunals in the judicious exercise of their judicial power, non-Article III tribunals do not have the "judicial power" to delegate matters back to the Article III district courts. 28 U.S.C. § 157(a); *see also Biglari*, 142 B.R. at 780 ("The reference statute is a 'one-way street' from the district court to the bankruptcy.").

10. Specifically, under the local rules of this district, the non-consenting party has fifteen days after the date the bankruptcy court grants the jury demand to file a motion with the district court to withdraw the reference. Local Rule 9015(b). Under the terms of that rule, failure to withdraw the reference within fifteen days of the entry of an order granting the party's jury demand will result in the waiver of the party's right to a jury trial. The local rule is buttressed by a line of cases that confirm that an entitlement to a jury can be waived by failure to timely comply with the rules connected with the conduct of a jury trial—and in the bankruptcy context, one of those rules grows out of the statute's requirement that, if a matter needs to be before a district court, it is incumbent upon the party to *timely* seek withdrawal of the reference. *See* 28 U.S.C. § 157(d); FED. R. BANKR. P. 5011; *see also In re Latimer*, 918 F.2d 136, 137 (10th Cir.1990), *cert. denied*, 502 U.S. 863, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991); *Consolidated Industries Corp. v. Welbilt Holding Co.*, 254 B.R. 237, 241 (N.D.Ind.2000); *In re Commercial Financial Services, Inc.*, 252 B.R. 516, 520 (Bankr.N.D.Okla.2000); *In re West Coast Video Enterprises, Inc.*, 145 B.R. 484, 489 (Bankr.E.D.Pa.1992). Section 157(d) also permits the district court to withdraw the reference on its own motion. That, however, is unlikely to happen if no one tells the district judge there is a problem, because bankruptcy pleadings do not, as a matter of course, cross the district judge's desk. Indeed, they do not even cross the district clerk's intake desk.

petition the district court to withdraw the reference. *See* 28 U.S.C. § 157(d). The district court has the option, at that point of withdrawing the entire matter, or withdrawing only the trial portion, leaving pretrial and discovery matters to be handled by the bankruptcy judge. *See Stansbury* 13 F.3d at 128; *In re EquiMed, Inc.*, 254 B.R. 347 (D.Md.2000). Complete or partial withdrawal of the reference, however, is a decision to be made by the district court, not the bankruptcy court. *See Orion Pictures Corp.*, 4 F.3d at 1102; *Stansbury Poplar Place, Inc.*, 13 F.3d at 128.

In this case, both parties acknowledge that a number of the actions asserted against Zollino are "legal" in nature and so fall within the ambit of the Seventh Amendment. This court agrees that Zollino is entitled to a jury trial on those matters. Because Zollino has refused to consent to a jury trial and to entry of final orders by this court, this case cannot statutorily or constitutionally be tried in the bankruptcy court. This court, however, is nonetheless powerless to transfer or refer the case to the district court. Zollino must therefore file a motion with the district court to withdraw the reference. If he fails to do so in a timely manner, he will have waived his entitlement to a jury trial. *See* note 10 *supra.* If, as, and when the district court withdraws the reference, that court will determine whether this court will continue to play any role in the matter.[11]

## IV. CONCLUSION

▮▮▮▮ Zollino's jury demand in Adversary Case No. 00–5090–C is granted. Although some of the issues in the adversary proceeding do not necessarily fall within the ambit of the Seventh Amendment, those that do are sufficiently intertwined as a factual matter that bifurcation would be costly and counterproductive. FED. R. CIV. P. 42; *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir.1998) ("When claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before final court determination of the equitable claims"); *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir.1996) ("Bifurcation may therefore be appropriate where the evidence offered on two different issues will be wholly distinct ... or where litigation of one issue may obviate the need to try another issue."); *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir.1982) (holding that the decision to severe issues for separate trials is within the sound discretion of the trial court). Because Zollino has expressly refused to consent to a jury trial in this court, and further refused to consent to this court's entering judgment at the conclusion of trial, Zollino must timely petition the district court to withdraw the reference within fifteen days of the entry of this order. If he fails to do so, then, of necessity, Zollino

---

11. The district court might, for example, elect to withdraw only the conduct of the trial of the matter (including the selection of the jury), leaving to this court the task of administering discovery, ruling on pretrial motions, and deciding dispositive motions that require only a construction of the law. Or the district court might withdraw the entire adversary proceeding, then re-assign these pretrial matters to a magistrate judge. The one thing the district court is strongly discouraged from doing by the Fifth Circuit is (a) withdrawing the reference and (b) reassigning the *entire matter,* including the conduct of the trial, to a magistrate judge. *See Clay,* 35 F.3d at 193. That, says the Fifth Circuit, defeats the intentions of Congress in enacting the entire reference scheme in the first place, and raises serious constitutional questions. *See id.* at 194.

will be deemed to have waived his jury demand, and this matter will be scheduled for trial to the bench.

If Zollino timely files a motion to withdraw the reference, this matter will nonetheless continue on this court's docket and a scheduling order will issue. The matter will be scheduled for a jury trial in this court, and discovery will proceed apace, as will this court's consideration of dispositive motions and the like. The court follows this procedure lest a party use the filing of a motion to withdraw the reference as a device to buy time or cause delay.[12] In any event, until such time as the district court withdraws the reference either in whole or in part, the matter is still on this court's docket, and is thus this court's responsibility to administer.

**So ORDERED.**

---

12. That danger is real because the district courts of the Western District of Texas currently administer one of the heaviest criminal dockets in the nation. *See* John Council, *Border Crime Clogs Courts*, 13 TEXAS LAWYER No. 4 (1997) ("In a federal report released last month, the Western District of Texas, which includes El Paso, was ranked third in the nation in the number of drug cases filed in 1996."); William D. Underwood, *Divergence in the Age of Cost and Delay Reduction: the Texas Experience With Federal Civil Justice Reform*, 25 TEX. TECH L. REV. 261, 304 (1994) ("In the Western District of Texas for example, the number of felony prosecutions grew by 129 percent between 1982 and 1992. Incredibly, the number of drug-related prosecutions increased by 366 percent. During this same period, the number of authorized judgeships in the Western District only increased from six to ten.") The district courts have been zealous in their handling of their dockets—including their bankruptcy duties—but the reality of workloads is such that the district courts must sometimes prioritize. As a matter of priority, criminal matters must come first because of the Speedy Trial Act and related constitutional provisions. 18 U.S.C. § 3162 *et seq.*