In re VAN DYCK/COLUMBIA PRINTING, Debtor.

Barbara Katz, Trustee, Plaintiff,

v.

Leonard P. Drabkin Irrevocable Trust, Defendant.

Barbara Katz, Trustee, Plaintiff,

v.

Leonard P. Drabkin, Defendant.

Barbara Katz, Trustee, Plaintiff,

v.

Ida K. Stark Trust, Defendant.

Barbara Katz, Trustee, Plaintiff,

v.

Drabkin Family Spray Trust, Defendant.

Bankruptcy No. 95–30979. Adversary Nos. 97–3173, 97–3174, 97–3177, 97–3179.

United States Bankruptcy Court, D. Connecticut.

June 13, 2001.

Michael S. Schenker, Francis, O'Neil & Del Piano, Hartford, CT, for Plaintiff.

Ira B. Grudberg, Jacobs, Grudberg, Belt & Dow, New Haven, CT, for Defendants.

## CONSOLIDATED MEMORANDUM OF DECISION ON COMPLAINTS TO AVOID TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. BACKGROUND

Before the Court are the four captioned adversary proceedings commenced by the Plaintiff–Trustee to avoid and recover, as preferential or fraudulent, certain transfers from the Debtor to the Defendants within the one-year period prior to the bankruptcy petition date. This consolidat-

ed Memorandum of Decision sets forth the factual and legal bases of the Court's judgment in each adversary proceeding.

## II.  JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine these proceedings on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1).  These are "core proceedings" pursuant to 28 U.S.C. §§ 157(b)(2)(F), (H).

## III.  FACTUAL BACKGROUND

The Court's findings of fact are derived from the evidence adduced at trial, as well as the Court's independent examination of the official record of the instant case and adversary proceedings.

### A.  The Debtor and the Estate.

The Debtor, Van Dyck/Columbia Printing (hereafter, "VDC"), was at all relevant times a partnership engaged in the printing trade.  Beginning in the early 1990's, after decades of profitable operations, VDC and its predecessor entities experienced inconsistent and generally eroding fiscal performance.  In fact, by the time of each of the transfers detailed in Section III.B. of this Memorandum of Decision, VDC was insolvent.[1]

On June 19, 1995 (hereafter, the "Petition Date"), VDC commenced a Chapter 11 bankruptcy case in this Court through the filing of a voluntary petition.  On July 3, 1996, having failed to successfully reorganize under Chapter 11, VDC's bankruptcy was converted to a liquidation case under Chapter 7.  Barbara H. Katz—the Plaintiff here—was appointed Trustee of the resulting Chapter 7 estate.  Consistent with her duties as Trustee, the Plaintiff commenced a series of avoidance and recovery actions—including the instant proceedings—against entities which received transfers of property from VDC within the applicable time-frames established under Bankruptcy Code Sections 547 and 548.

### B.  The Defendants and the Subject Transfers.

The following is a description, with respect to each Defendant, of the circumstances of the transfers which are the current[2] subjects of these adversary proceedings.

#### 1.  Defendant Leonard P. Drabkin (Adv.Pro. No. 97–3174).

At all relevant times, the Defendant Leonard P. Drabkin (hereafter, "Drabkin") was the chief executive officer and an "insider" of VDC within the meaning of Section 101(31) of the Bankruptcy Code. Also, at all relevant times, Drabkin was a "creditor" of VDC within the meaning of Code Section 101(10).  The Plaintiff alleges that Drabkin was the recipient or beneficiary of the following transfers, which she asserts are avoidable by her in this case.

---

1.  In developing its finding on solvency, the Court has credited as persuasive the testimony of Richard Finkel, the Plaintiff's accounting expert, except for that portion of his testimony respecting (i) the valuation of VDC's mortgage liability on real property located on Welton Street in the Town of Hamden, Connecticut, and (ii) VDC's related right to receive proceeds from the sale of such property.

2.  Several of the Counts and claims of the Complaints in these adversary proceedings have been abandoned by the Trustee.  This Memorandum of Decision addresses only facts and law relevant to the non-abandoned claims.

#### a. Direct Transfer.

On January 31, 1995, VDC's check # 25282, payable to Drabkin in the amount of $4000.00 was honored by the drawee, Lafayette American Bank & Trust Co. (hereafter, "Lafayette Bank"). This transaction constituted a direct transfer to Drabkin (hereafter, the "Direct Transfer").

#### b. Dockomania Transfers.

Between December 7, 1994 and May 24, 1995, a series of VDC's checks payable to Dockomania Associates in the aggregate amount of $51,160.16 were honored by the drawee, Lafayette Bank (hereafter, the "Dockomania Transfers"). Dockomania Associates (hereafter, "Dockomania") is a partnership or joint venture between Drabkin and Attorney Ira B. Grudberg (hereafter, "Grudberg"), formed for purposes of investment in marine docks. Some of VDC's checks made payable to Dockomania (hereafter, "Dockomania Checks") were deposited directly into Dockomania's account at Lafayette Bank, but in other instances Grudberg endorsed and deposited Dockomania Checks into his law office's trust account. Despite the various modes of handling, all of the Dockomania Checks were written for the benefit of Drabkin. It was the practice of VDC to make periodic payments to third parties—such as Dockomania—for the benefit of Drabkin, and then to regard the same as "bonus" compensation in consideration for the personal services rendered by Drabkin as chief executive of VDC.

#### 2. Defendant Leonard P. Drabkin Irrevocable Trust (Adv.Pro. No. 97–3173).

The Defendant Leonard P. Drabkin Irrevocable Trust (hereafter, the "LPD Trust") is a trust established, *inter alia*, to provide and administer insurance on the life of Drabkin. Grudberg, Paul R. Ber-

ney, and Ann Marie Drabkin are the trustees of the LPD Trust. At all times relevant to these adversary proceedings, the LPD Trust was an "insider" of VDC within the meaning of Section 101(31) of the Bankruptcy Code. Although the LPD Trust was never a creditor of VDC, Drabkin is a "creditor" of VDC within the meaning of Code Section 101(10).

On February 1, 1995, VDC's check # 25276, payable to the LPD Trust in the amount of $4500.00 was honored by the drawee, Lafayette Bank (hereafter, the "Insurance Transfer"). Grudberg endorsed and deposited the check into his law office's trust account, and then paid a premium on an insurance policy on the life of Drabkin. It was the practice of VDC to make periodic payments such as the Insurance Transfer to the LPD Trust for the benefit of Drabkin, and then to regard the same as "bonus" compensation in consideration for the personal services rendered by Drabkin as chief executive of VDC.

#### 3. Defendant Ida K. Stark Trust (Adv.Pro. No. 97–3177).

The Defendant Ida K. Stark Trust (hereafter, the "IKS Trust") is a trust established by Ida K. Stark, a now-deceased aunt of Drabkin. The beneficiaries of the IKS Trust are Drabkin and his lineal descendants. Drabkin and Grudberg are trustees of the IKS Trust. At all times relevant to these adversary proceedings, the IKS Trust was an "insider" of VDC within the meaning of Section 101(31) of the Bankruptcy Code. Also at all relevant times, the IKS Trust was a "creditor" of VDC within the meaning of Code Section 101(10). During the 1990's the IKS Trust extended credit to VDC in various forms, including general cash flow loans and financing for repair of the roof of VDC's business premises.

### a. General Loans.

Since at least late 1992, the IKS Trust had been a general lender to VDC in connection with VDC's cash flow deficits. Between December 1992 and March 1995, the IKS Trust made approximately 15 separate loans to VDC in the aggregate amount of $473,000.00 (hereafter, the "IKS General Loans"). Nearly all of these loans were evidenced by promissory notes which stated that loan repayment was due "on demand, but payable in full in thirteen months...." In the one year period preceding the Petition Date, four IKS General Loans were paid back to the IKS Trust (hereafter, the "IKS General Loan Transfers"). The following schedule presents the details of all IKS General Loan transactions within that one-year period:

| Loan Date | Loan Amount | Payment Date | Check # | Payment Amount |
|-----------|-------------|--------------|---------|----------------|
| 10–25–94 | $43,000.00 | 11–23–94 [3] | ? [4] | $43,000.00 |
| 10–27–94 | $50,000.00 | 11–23–94 [5] | ? [6] | $50,000.00 |
| 01–10–95 | $35,000.00 | 05–03–95 [7] | 26130 | $35,000.00 |
| 02–14–95 | $15,000.00 | N/A | N/A | N/A |
| 03–30–95 | $20,000.00 | 05–03–95 [8] | 25873 | $20,000.00 |

### b. Roof Loans.

In or about late 1994 it became necessary for VDC to perform certain repairs to the roof of the building which served as its headquarters and production facility. The IKS Trust financed the roof repairs for VDC through two loan advances—one on October 19, 1994, and the other on November 28, 1994—totaling approximately $27,500.00. The repayment terms for those loans called for weekly payments of $750.00. Consistent with that schedule, between December 2, 1994 and May 26, 1995, VDC delivered 25 checks to the IKS Trust in the amount of $750.00 each, dated in nearly precise one-week intervals.[9]

### 4. Defendant Drabkin Family Spray Trust (Adv.Pro. No. 97–3179).

The Defendant Drabkin Family Spray Trust (hereafter, the "DFS Trust") is a trust established by Drabkin's mother, Rebecca K. Drabkin. The beneficiaries of the DFS Trust are Drabkin and his lineal descendants. Drabkin and Grudberg are the Trustees of the DFS Trust. At all times relevant to these adversary proceedings, the DFS Trust was an "insider" of VDC within the meaning of Section 101(31) of the Bankruptcy Code. Also at all relevant times, the DFS Trust was a "creditor" of VDC within the meaning of Code

3. The only evidence of the date of this transfer was trial Exhibit 2A—the Defendant's ledger titled, "Notes VDC paid back in 1 year prior to Chapter 11 filing". No canceled check was produced at trial.

4. The only evidence of this transfer was trial Exhibit 2A—the Defendant's ledger titled, "Notes VDC paid back in 1 year prior to Chapter 11 filing". Hence, it is not certain that this transfer was made by check.

5. See footnote 3.

6. See footnote 4.

7. This check was dated April 28, 1995, although it was neither presented to, nor paid by, the drawee, Lafayette Bank, until May 3, 1995.

8. This check was dated April 4, 1995, although it was neither presented to, nor paid by, the drawee, Lafayette Bank, until May 3, 1995.

9. The dates on which the drawee, Lafayette Bank, honored the checks do not correspond to precise one-week intervals, reflecting and implying that some checks were held by the IKS Trust for a period of time prior to deposit.

Section 101(10). During the 1990's the DFS Trust extended credit to VDC in various forms, including general cash flow loans and the provision of certain printing equipment through leases.

### a. General Loans.

Since at least March of 1993, the DFS Trust had been a general lender to VDC in connection with VDC's cash flow deficits. Between March 1993 and March 1995, the DFS Trust made approximately six separate loans to VDC in the aggregate amount of $210,000.00 (hereafter, the "DFS General Loans"). Nearly all of these loans were evidenced by promissory notes which stated that loan repayment was due "on demand, but payable in full in thirteen months...." Within the one year period preceding the Petition Date, three of the DFS General Loans were paid back to the DFS Trust (hereafter, the "DFS General Loan Transfers"). The following schedule presents the details of all DFS General Loan transactions in that one-year period:

| Loan Date | Loan Amount | Payment Date | Check # | Payment Amount |
|---|---|---|---|---|
| 10–27–94 | $50,000.00 | 11–23–94 [10] | ? [11] | $50,000.00 |
| 12–09–94 | $25,000.00 | 04–28–95 | 26131 | $25,000.00 |
| 01–24–95 | $25,000.00 | N/A | N/A | N/A |
| 03–30–95 | $40,000.00 | 04–28–95 | 26131 | $40,000.00 |

### b. Equipment Rental.

The DFS Trust also purchased certain printing equipment, and then leased the same to VDC pursuant to a long-term lease effective December 1, 1990. The Plaintiff introduced into evidence three checks, each in the amount of $1,500.00, which were honored by the drawee, Lafayette Bank, on December 23, 1994, December 30, 1994, and March 10, 1995, respectively (hereafter, the "Equipment Rental Transfers"). These checks were dated and delivered in nearly precise one-month intervals on the last day of November and December, 1994 and January 1995.

## IV. DISCUSSION

### A. Governing Law.

#### 1. Preferential transfers.

■ The Plaintiff–Trustee seeks to avoid the Transfers as "preferential" under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

(a) In this section—

\*　　\*　　\*　　\*　　\*　　\*

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

\*　　\*　　\*　　\*　　\*　　\*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

---

**10.** *See* footnote 3.

**11.** *See* footnote 4.

**174**

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; and

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

\*    \*    \*    \*    \*    \*

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

\*    \*    \*    \*    \*    \*

11 U.S.C. § 547 (1995). The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer under Section 547(b); and the Defendants must carry the burden of proving any affirmative defenses of Section 547(c). *See* 11 U.S.C. § 547(g) (1995).

### 2. *Fraudulent transfers.*

■ The Plaintiff–Trustee also seeks to avoid certain of the Transfers as "fraudulent" transfers under the authority of Section 548 of the Bankruptcy Code, which provides in pertinent part that—

(a) [t]he trustee may avoid any transfer of an interest of the debtor in property . . . that was made . . . on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\*    \*    \*    \*    \*    \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer . . .; and

(B)(i) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer. . . .

\*    \*    \*    \*    \*    \*

(c) Except to the extent that a transfer . . . voidable under this section is voidable under section 544, 545, or 547

of this title, a transferee... of such a transfer... that takes for value and in good faith has a lien or may retain any interest transferred... to the extent that such transferee... gave value to the debtor in exchange for such transfer....

\* \* \* \* \* \*

11 U.S.C. § 548 (1995). The Plaintiff–Trustee bears the ultimate burden of proof on all of the elements of a constructively fraudulent transfer under Section 548(a)(2); and the Defendants must carry the burden of proving the elements of an affirmative defense under Section 548(c).

## B. Analysis of Transfers.

### 1. Defendant Leonard P. Drabkin (Adv.Pro. No. 97–3174).

#### a. Direct Transfer.

■ In Count I of her Complaint the Plaintiff seeks to avoid and recover the Direct Transfer, *inter alia*, as a preferential transfer. Although Drabkin was a creditor of VDC, the Plaintiff has failed to carry her burden of proving that the Direct Transfer was "for or on account of" a debt owed by VDC to Drabkin as required by Code Section 547(b)(2). It is thus unnecessary for the Court to consider any of the other elements of Section 547(b), or the defenses of Section 547(c). Judgment shall enter in favor of the Defendant on Count I.

#### b. Dockomania Transfers.

##### i. As preferential transfers.

■ In Count II of her Complaint, the Plaintiff seeks to avoid and recover the Dockomania Transfers as preferential transfers. Although the Dockomania Transfers were made by VDC for the benefit of Drabkin, and Drabkin was a creditor of VDC, the Plaintiff has failed to carry her burden of proving that the Dockoma-

nia Transfers were "for or on account of" any debt owed by VDC to Drabkin as required by Code Section 547(b)(2). It is thus unnecessary for the Court to consider any of the other elements of Section 547(b) or the defenses of Section 547(c). Judgment shall enter in favor of the Defendant on Count II.

##### ii. As fraudulent transfers.

■ In Count III of her Complaint, the Plaintiff seeks to avoid the Dockomania Transfers as fraudulent transfers. The credible trial testimony of multiple witnesses established that the Dockomania Transfers were regarded by VDC and Drabkin as a bonus component of Drabkin's annual compensation for personal services rendered to VDC as its chief executive officer. The Plaintiff has failed to rebut that showing, or demonstrate that such personal services were of less than reasonably equivalent value to the Dockomania Transfers. Accordingly, judgment shall enter in favor of the Defendant on Count III.

### 2. Leonard P. Drabkin Irrevocable Trust (Adv.Pro. No. 97–3173).

#### a. As a preferential transfer.

In Count I of her Complaint, the Plaintiff seeks to avoid and recover the Insurance Transfer as a preferential transfer. Although the Insurance Transfer was made by VDC for the benefit of Drabkin, and Drabkin was a creditor of VDC, the Plaintiff has failed to carry her burden of proving that the Insurance Transfer was "for or on account of" any debt owed by VDC to Drabkin as required by Code Section 547(b)(2). For the foregoing reason it is unnecessary for the Court to consider any of the other elements of Section 547(b), or the defenses of Section 547(c).

Judgment shall enter in favor of the Defendant on Count I.

### b. As a fraudulent transfer.

■ In Count II of her Complaint, the Plaintiff seeks to avoid the Insurance Transfer as a fraudulent transfer. Although the Plaintiff has convinced the Court that the *LPD Trust* did not give "reasonably equivalent value in exchange" for the Insurance Transfer, such a finding is immaterial under applicable law. Section 548 provides for avoidance of a transfer only if "the *debtor . . . received* less than a reasonably equivalent value in exchange" for that transfer. In other words the statutory focus is on what the debtor received, not from whom it was received. The credible trial testimony of multiple witnesses established that the Insurance Transfer was regarded by VDC and Drabkin as a bonus component of Drabkin's annual compensation for personal services rendered to VDC as its chief executive officer, and that such services were of a "reasonably equivalent value" to the Insurance Transfer. Accordingly, judgment shall enter for the Defendant on Count II.

### 3. Ida K. Stark Trust (Adv.Pro. No. 97–3177).

### a. General Loan Transfers.

### i. As preferential transfers.

In Count I of her Complaint, the Plaintiff seeks to avoid and recover the $148,000.00 in IKS General Loan Transfers as preferential transfers under Section 547(b). It is beyond contest that the Plaintiff has met her burden as to the elements of Section 547(b). The IKS Trust was at all relevant times an "insider" and "creditor" of VDC. The IKS General Loan Transfers were made from VDC's account to the IKS Trust on account of an "antecedent debt" within the one year prior to the Petition Date, at a time when, as the Court has previously found, the Debtor was insolvent. Finally, the IKS General Loan Transfers enable the IKS Trust to receive more than it would receive had the transfers not been made and it received payment on its claims in the manner and to the extent provided for under the provisions of the Bankruptcy Code applicable to this Chapter 7 case. Despite the establishment of this *prima facie* case, the IKS Trust has averred three affirmative defenses.

■ The first defense is asserted under Section 547(c)(1). Consistent with that Section, the IKS Trust maintains that the IKS General Loan Transfers were "contemporaneous exchange[s] for new value". However, the Court does not find support for the elements of that defense in the evidentiary record. The trial testimony did not establish that VDC and IKS intended these loan transactions to be contemporaneous exchanges as required by subsection (A) of Section 547(c)(1). Certainly VDC and the IKS Trust each *hoped* that repayments could be accomplished quickly, but also knew that it might lag the loan advances by weeks or even months. This fact is borne out by the form of promissory note executed in connection with these loans; its language—"on demand, but payable in full in thirteen months"—is consistent with the unpaid notes between VDC and the IKS Trust. Yet even if VDC and the IKS Trust had intended these transactions to be contemporaneous exchanges, they in fact were not. The four IKS General Loan Transfers followed their corresponding loan advances by 29, 27, 113, and 34 days, respectively. Under the circumstances of the instant proceeding the Court concludes that transfers with such post-advance time lags do not constitute "substantially con-

temporaneous exchange[s]" within the scope of subsection (B) of Section 547(c)(1).

■ Next, the IKS Trust asserts that the IKS General Loan Transfers constitute "ordinary course" transfers within the scope of Section 547(c)(2). Based upon the evidentiary record in this proceeding, it is a close question of whether VDC "incurred" the subject debt, and "made" the IKS General Loan Transfers, in the "ordinary course of business or financial affairs" of VDC and the IKS Trust. However, the Court need not grapple further with those questions since the IKS Trust has failed to meet its burden of establishing that the IKS General Loan Transfers were made according to "ordinary business terms" within the scope of Section 547(c)(2)(C). In *Lawson v. Ford Motor Company (In re Roblin Industries, Inc.)*, 78 F.3d 30, 39–41 (2d Cir.1996), the Second Circuit Court of Appeals made clear that a trial court's assessment of "ordinary business terms" is an objective function, *i.e.* a court must determine what terms are ordinary in a debtor's relevant industry. Here, the Court received no evidence of general lending terms and/or practices in the printing industry, or other relevant market group. Hence, the IKS Trust has failed to meet its burden of proof on the "ordinary course of business" defense.

■ The IKS Trust fares somewhat better in its assertion of a defense under Section 547(c)(4). As found *supra*, on February 14, 1995, subsequent to the IKS General Loan Transfers of November 23, 1994, the IKS Trust advanced an unsecured loan to VDC in the amount of $15,000.00, which remained unpaid as of the Petition Date.[12] Such advance constitutes "new value", which is available under Section 547(c)(4) to offset the Plaintiff's avoidance of either the $43,000.00 or $50,000.00 IKS General Loan Transfer of November 23, 1994.

■ The IKS Trust also advances an equitable defense. It argues that it would be unfair to permit avoidance and recovery of transfers to it in light of its extraordinary support of VDC during its period of financial travail. Although the record makes clear that the IKS Trust, among other entities, was indeed a consistent and generous source of capital for VDC in troubled times, it would be inappropriate for this Court to structure an equitable defense on that basis. In drafting the defenses of Code Section 547(c), Congress was mindful of the equities of "white knight" creditors—insiders or not—who might "work with" a debtor in the days leading up to a bankruptcy filing. Congress sought to encourage and protect such activity, and Section 547(c)(4) is the tool it fashioned for that purpose. *See, e.g., Kroh Brothers Development Co. v. Continental Construction Engineers (In re Kroh Brothers Development Co.)*, 930 F.2d 648, 651 (8th Cir.1991). Where Congress has appreciated a problem, and has codified a specific statutory tool to address it, this Court's expansion of that remedy, even in the cause of equity, would amount to an illicit act of legislation.[13]

---

**12.** This finding and conclusion addresses the rather cumbersome language of Section 547(c)(4). *See* King, ed., *Collier on Bankruptcy*, Vol. 5, ¶ 547.04[4], p. 547–58 (15th rev. ed.) (utilizing the term "unpaid" as shorthand for the language of Section 547(c)(4)(B)).

**13.** Nor, in this proceeding, is it appropriate for this Court to question the scope of Con-

gress' statutory remedy. For example, under circumstances akin to those of this case, an argument could well be made that an insider's "behind-the-scenes" "propping up" of a debtor induced innocent trade creditors to continue to deal with the debtor on credit longer than was prudent, to their ultimate loss.

In sum, a monetary judgment in the amount of $133,000.00 shall enter in favor of the Plaintiff on Count I of the Plaintiff's Complaint with respect to the IKS General Loan Transfers.[14]

### ii.   As fraudulent transfers.

■ Having found the IKS General Loan Transfers avoidable as preferential transfers, except to the extent of $15,000.00, it is unnecessary for the Court to engage in an analysis of the Plaintiff's fraudulent transfer count—Count II—except as to that yet-unavoided $15,000.00.

Nothing in the record of this adversary proceeding undermines the IKS Trust's contention that the IKS General Loan Transfers were supported by "reasonably equivalent value" within the meaning of Section 548(a)(1)(B). The loans which those transfers retired were bona fide advances of equivalent cash from the IKS Trust to VDC. Accordingly, judgment shall enter in favor of the Defendant on Count II of the Plaintiff's Complaint with respect to the IKS General Loan Transfers.

### b.   Roof Loan Transfers.

### i.   As preferential transfers.

In Count I of her Complaint, the Plaintiff seeks to avoid and recover as preferential the $18,750.00 in Roof Loan Transfers. The Plaintiff has met her burden as to the elements of Section 547(b) with respect to those transfers. The IKS Trust was at all relevant times an "insider" and "creditor" of VDC. The Roof Loan Transfers were made from VDC to the IKS Trust on account of an "antecedent debt" within the one year prior to the Petition Date, at a time when, as the Court has found, the Debtor was insolvent. Finally, the Roof

Loan Transfers enabled the IKS Trust to receive more than it would receive had the transfers not been made and it received payment on its claims against VDC to the extent provided for under the provisions of the Bankruptcy Code applicable to this Chapter 7 case. Despite the Plaintiff's establishment of a prima facie case, the IKS Trust presented certain evidence at trial in an attempt to utilize certain affirmative defenses afforded by Code Section 547(c).

For its first defense the IKS Trust argues that the Roof Loan Transfers were intended to be "contemporaneous exchange[s] for new value" within the meaning of Section 547(c)(1). This assertion is plainly without merit and wholly unsupported by the evidentiary record in this proceeding. VDC and the IKS Trust did not intend the roof loan transactions to be contemporaneous exchanges. They were set up on an *installment* basis, and in fact paid *over time* in precisely that manner.

Next, the IKS Trust asserts that the Roof Loan Transfers constituted "ordinary course" transfers within the scope of Section 547(c)(2). Based upon the evidentiary record in this proceeding, it is a close question whether VDC incurred the subject debt, and made the Roof Loan Transfers, in the ordinary course of the business or financial affairs of VDC and the IKS Trust. However, the Court need not opine on those questions since the IKS Trust has failed to meet its burden of establishing that the Roof Loan Transfers were made according to "ordinary business terms". Again, the record is devoid of any evidence of lending terms or practices in the printing industry, or other relevant market group, with respect to financial arrangements akin to the subject roof loans.

---

14.   Under the circumstances of this proceeding, the Court declines to grant an award of prejudgment interest.

Hence, the IKS Trust has failed to meet its burden of proof on its "ordinary course of business" defense.

An assessment of the IKS Trust's third affirmative defense—under Section 547(c)(4)—is somewhat more complex. The IKS Trust made three separate advances of "new value" which postdate one or more of the Roof Loan Transfers, namely: (i) an advance of $35,000.00 on January 10, 1995; (ii) an advance of $15,000.00 on February 14, 1995; and (iii) an advance of $20,000.00 on March 30, 1995. The February 14, 1995 advance is unavailable as an offset because it has already been utilized to offset, in part, the Plaintiff's avoidance of General Loan Transfers. However, the January 10 and March 30, 1995 advances do qualify as offsetting new value. Under the terms of Section 547(c)(4), a creditor advance to a debtor within the preference period qualifies as offsetting "new value" if (i) the creditor gave the debtor "new value" *after* the avoidable transfer sought to be offset; (ii) if that new value was given on an unsecured basis; [15] and (iii) if as of the bankruptcy petition date the "new value" advance remained either unpaid or paid through a transfer which is *itself* avoidable. *See, e.g., Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.),* 52 F.3d 228 (9th Cir.1995). Under this analysis, the January 10 and March 30, 1995 advances qualify as offsets because, *inter alia,* they were subsequent cash advances repaid by VDC through *avoidable* transfers.[16] Specifically, the January 10, 1995 advance postdates, and thus offsets, the five earliest Roof Loan Transfers totaling $3,750.00. The March 30, 1995 advance postdates, and

thus offsets, the subsequent nine Roof Loan Transfers totaling $6,750.00. Hence, eleven Roof Loan Transfers, totaling $8,250.00, postdate the final offsetting advance, and thus remain avoidable by the Plaintiff–Trustee. Judgment shall enter accordingly on Count I of the Plaintiff's Complaint with respect to the Roof Loan Transfers.[17]

#### ii. As fraudulent transfers.

Having found the Roof Loan Transfers avoidable as preferential transfers, except to the extent of $10,500.00, it is unnecessary for the Court to engage in an analysis of the Plaintiff's fraudulent transfer count—Count II—except as to that yet-unavoided $10,500.00. Nothing in the record of this adversary proceeding undermines the IKS Trust's contention that the Roof Loan Transfers were supported by "reasonably equivalent value" within the meaning of Section 548(a)(1)(B). The loans which those transfers partially retired on an installment basis were *bona fide* advances of equivalent cash from the IKS Trust to VDC for legitimate roof repairs. Accordingly, judgment shall enter in favor of the Defendant on Count II of the Plaintiff's Complaint with respect to the Roof Loan Transfers.

#### 4. Drabkin Family Spray Trust (Adv. Pro. No. 97–3179).

##### a. General Loan Transfers.

##### i. As preferential transfers.

In Count I of her Complaint, the Plaintiff seeks to avoid and recover as preferen-

---

**15.** Under Section 547(c)(4)(A) a *secured* advance can also qualify if the subject security interest is avoidable.

**16.** These advances were repaid through IKS General Loan Transfers which are avoidable

as discussed in Section IV.B.3.a.i. of this Memorandum of Decision.

**17.** Under the circumstances of this proceeding, the Court declines to grant an award of prejudgment interest.

tial the $115,000.00 in DFS General Loan Transfers. The Plaintiff has easily met her burden as to the elements of Section 547(b) with respect to the DFS General Loan Transfers. The DFS Trust was at all relevant times an "insider" and "creditor" of VDC. The DFS General Loan Transfers were made from VDC to the DFS Trust on account of an "antecedent debt" within one year prior to the Petition Date, at times when, as the Court has found, the Debtor was insolvent. Finally, the DFS General Loan Transfers enabled the DFS Trust to receive more than it would receive had the transfers not been made and it received payment on its claims against VDC to the extent provided for under the provisions of the Bankruptcy Code applicable to this Chapter 7 case. Despite the Plaintiff's establishment of this *prima facie* case, the DFS Trust has asserted three affirmative defenses.

The first defense is maintained under Section 547(c)(1). Consistent with that subsection, the DFS Trust asserts that the DFS General Loan Transfers were "contemporaneous exchange[s] for new value". However, the Court finds that the evidentiary record does not support the elements of this defense. While the testimony supports the notion that the DFS Trust expected the subject loans to be paid back in a more prompt manner than previous general loans, *i.e.* as soon as excess cash became available. VDC and the DFS Trust did not intend these loan transactions to be actually contemporaneous exchanges. They each *hoped* that repayment could be accomplished quickly, but knew that it might lag the advances by weeks or even months. This fact is borne out by the language of the promissory notes executed in connection with the subject loans—the debts were due "on demand, but payable in full in thirteen months". Yet even if VDC and the DFS Trust had intended these transactions to be contemporaneous exchanges, they in fact were not. The four DFS General Loan Transfers followed their corresponding loan advances by 27, 145, and 34 days, respectively. The Court concludes, under the circumstances of this case, that transfers with such post-advance time lags do not constitute "substantially contemporaneous exchange[s]" within the meaning of subsection (c)(1)(B) of Section 547.

The DFS Trust next asserts that the DFS General Loan Transfers constituted "ordinary course" transfers within the scope of Section 547(c)(2). Based on the evidentiary record in this proceeding, it is a close question whether VDC *incurred* the subject debt, and *made* the DFS General Loan Transfers, in the ordinary course of business or financial affairs of VDC and the DFS Trust. However, the Court need not opine upon those questions since the DFS Trust has failed to meet its burden of establishing that the DFS General Loan Transfers were made according to "ordinary business terms". The Court received *no evidence of practices in the printing industry*, or other relevant market grouping, with respect to financial arrangements akin to the subject loans. Hence, the DFS Trust has failed to meet its burden of proof on the ordinary course of business defense.

The DFS Trust fares somewhat better in its assertion of a defense under Section 547(c)(4). As found *supra*, the DFS Trust advanced a loan to VDC in the amount of $25,000.00 on January 24, 1995. This unsecured loan advance was made after the DFS General Loan Transfer of November 23, 1994, and was not subsequently repaid by VDC. Thus, the advance constitutes subsequent "new value", which is available under Section 547(c)(4) to offset the avoidance of the $50,000.00 DFS General Loan Transfer of November 23, 1994.

The DFS Trust also advances an equitable defense. It argues that it would be

unfair to permit avoidance and recovery of transfers to it in light of its extraordinary support of VDC during its period of financial travail. Although the record makes clear that the DFS Trust, among other entities, was indeed a consistent and generous source of capital for VDC in troubled times, this Court declines to recognize an equitable defense on that basis for the reasons stated more fully in Section IV. B.3.a.i. of this Memorandum of Decision.

In sum, a monetary judgment in the amount of $90,000.00 shall enter in favor of the Plaintiff on Count I of the Plaintiff's Complaint with respect to the DFS General Loans.[18]

### ii. As fraudulent transfers.

Having found the DFS General Loan Transfers avoidable as preferential transfers, except to the extent of $25,000.00, it is unnecessary for the Court to engage in an analysis of the fraudulent transfer count—Count II—of the Plaintiff's Complaint, except as to the yet-unavoided $25,000.00. Nothing in the record of this adversary proceeding undermines the DFS Trust's contention that the DFS General Loan Transfers were supported by "reasonably equivalent value" within the meaning of Section 548(a)(1)(B). The loans which those transfers retired were *bona fide* advances of equivalent cash from the DFS Trust to VDC. Accordingly, judgment shall enter in favor of the Defendant on Count II of the Plaintiff's Complaint with respect to the DFS General Loan Transfers.

### b. Equipment Rental Transfers.

### i. As preferential transfers.

In Count I of her Complaint, the Plaintiff seeks to avoid and recover as preferen-

tial the $4,500.00 in Equipment Rental Transfers. The Plaintiff has easily made out a prima facie case with respect the avoidance to the Equipment Rental Transfers under Section 547(b). The DFS Trust was at all relevant times an "insider" and "creditor" of VDC. The Equipment Rental Transfers were made from VDC to the DFS Trust on account of an "antecedent debt" within one year prior to the Petition Date, at a time when, as the Court has found, VDC was insolvent. Finally, the Equipment Rental Transfers enabled the DFS Trust to receive more than it would receive had the transfers not been made and it received payment on its claims against VDC to the extent provided for under the provisions of the Bankruptcy Code applicable to this Chapter 7 case. Nonetheless, DFS has argued and presented evidence at trial in an attempt to establish certain affirmative defenses afforded by Code Section 547(c).

The first defense is asserted under Section 547(c)(1). Consistent with that defense, the DFS Trust seems to argue that the Equipment Rental Transfers were intended to be "contemporaneous exchange[s] for new value". This assertion is plainly without merit and wholly unsupported by the evidentiary record in this proceeding. VDC and the DFS Trust did not intend the subject lease transactions to be contemporaneous exchanges. They were set up on an *installment* basis, and in fact paid *over time* in precisely that manner.

Next, the DFS Trust asserts that the Equipment Rental Transfers constitute "ordinary course" transfers within the scope of subsection 547(c)(2). Based on

---

**18.** Under the circumstances of this proceeding, the Court declines to grant an award of prejudgment interest.

the evidentiary record in this proceeding, it is a close question whether VDC incurred the subject obligation, and made the Equipment Rental Transfers, in the ordinary course of the business or financial affairs of VDC and the DFS Trust. However, the Court need not opine upon those questions since the DFS Trust has failed to meet its burden of establishing that the Equipment Rental Transfers were made according to "ordinary business terms". The record is devoid of any evidence of leasing terms or practices in the printing industry, or other relevant market grouping, with respect to financial arrangements akin to the subject equipment leases. Hence, the DFS Trust has failed to meet its burden of proof on its "ordinary course of business" defense.

An assessment of the DFS Trust's defense under Section 547(c)(4) is a somewhat more complex exercise. There are two advances of "new value" which postdate one or more of the Equipment Rental Transfers, namely: (i) an advance of $25,000.00 on January 24, 1995, and (ii) an advance of $40,000.00 on March 30, 1995. The January 24, 1995 advance is unavailable to the Defendant as an offset here because it has already been utilized to offset the Plaintiff's avoidance of $25,000.00 of DFS General Loan Transfers. However, the March 30, 1995 advance does qualify as offsetting "new value". Under the terms of Section 547(c)(4), a creditor advance to a debtor within the preference period qualifies as offsetting "new value" if (i) the creditor gave the debtor "new value" *after* the avoidable transfer sought to be offset; (ii) that new value was given on an unsecured basis; and (iii) as of the bankruptcy petition date the "new value" advance remained either unpaid, or was paid via a transfer which is

*itself* avoidable. *See, e.g., Mosier, supra.* Under these standards, the March 30, 1995 advance qualifies as an offset because, *inter alia*, it was subsequent cash advance repaid by VDC through an *avoidable* transfer.[19] Specifically, the March 30, 1995 advance postdates, and thus offsets, all three of the Equipment Rental Transfers. Judgment shall enter in favor of the Defendant on Count I with respect to the Equipment Rental Transfers.

### ii. As fraudulent transfers.

The record of this adversary proceeding supports the DFS Trust's contention that the Equipment Rental Transfers were in exchange for "reasonably equivalent value" within the meaning of Section 548(a)(1)(B). The lease(s) which those transfers serviced were *bona fide*, and permitted VDC's use of equipment on competitive terms. Accordingly, judgment shall enter in favor of the Defendant on Count II with respect to the Equipment Rental Transfers.

## V. CONCLUSION

For the foregoing reasons, judgment shall enter as follows in each of these adversary proceedings:

Adv. Pro. No. 97–3173—judgment for the Defendant on all Counts.

Adv. Pro. No. 97–3174—judgment for the Defendant on all Counts.

Adv. Pro. No. 97–3177 -

Count I—judgment for the Plaintiff in the amount of $141,250.00; and

Count II—judgment for the Defendant.

Adv. Pro. No. 97–3179 -

Count I—judgment for the Plaintiff in the amount of $90,000.00; and

---

**19.** This advance was repaid through a DFS General Loan Transfer which is avoidable as discussed in Section IV.B.4.a.i. of this Memorandum of Decision.

Count II—judgment for the Defendant.

Separate judgments shall enter this day. This Memorandum of Decision shall constitute the Court's Findings of Fact and Conclusions of Law for the purposes of Fed. R. Bank. P. 7052.