**In re: INLAND GLOBAL MEDICAL GROUP, INC., Debtor.**

**Richard K. Diamond, Chapter 7 Trustee, Plaintiff,**

**v.**

**The Gemmel Pharmacy Group, Inc., et. al., Defendants.**

**Bankruptcy No. RS 02–26263 PC.
Adversary No. RS 04–02251 PC.**

United States Bankruptcy Court, C.D. California, Riverside Division.

April 4, 2006.

Sandor T. Boxer, Law Offices of Sandor T. Boxer, Los Angeles, CA, for Plaintiff, Richard K. Diamond, Chapter 7 Trustee.

Stephen R. Wade, Law Offices of Stephen R. Wade, Upland, CA, for Defendants, The Gemmel Pharmacy Group, Inc., et. al.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Plaintiff, Richard K. Diamond, Chapter 7 Trustee ("Diamond") seeks to avoid certain alleged preferential transfers totaling $17,289.89 pursuant to 11 U.S.C. § 547(b). Defendant, The Gemmel Pharmacy Group, Inc., et. al., ("Gemmel") assert affirmative defenses to Diamond's preference claim under 11 U.S.C. §§ 547(c)(2) and (4). The court conducted a trial in this adversary proceeding on March 21, 2006, at which Sandor T. Boxer appeared for Diamond and Stephen R. Wade appeared for Gemmel. At the conclusion of trial, the matter was taken under submission. Having considered the pleadings, evidentiary record,[1] trial briefs and arguments of counsel, the court makes the following findings of fact and conclusions of law[2] pursuant to Fed. R.Civ.P. 52, as incorporated into Fed. R. Bankr.P. 7052.

## I. STATEMENT OF FACTS

On October 4, 2002, an involuntary chapter 7 petition was filed against *Inland Global Medical Group, Inc.* ("Inland Global"), in Case No. RS 02–26263 PC in the United States Bankruptcy Court, Central District of California, Riverside Division. An order for relief under chapter 7 was entered in the case on December 27, 2002. Diamond is the duly elected chapter 7 trustee of the bankruptcy estate of Inland Global, and has standing to pursue the causes of action alleged in the complaint filed in this adversary proceeding on behalf of such estate. At all relevant times, Gemmel was a Delaware corporation doing business in the state of California.

1. Having considered the Supplemental Declaration of Barry Vantiger in Lieu of Direct Testimony at Trial and Plaintiff's Supplemental Statement in Response To Supplemental Declaration of Barry Vantiger in Lieu of Direct Testimony at Trial, the court overrules Diamond's objections to Gemmel's Exhibits A–1 through A–10 and sustains Diamond's objection to Gemmel's Exhibit B. Exhibits A–1 through A–10 are admitted into evidence and Exhibit B is excluded.

2. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

On or about July 8, 2002, Inland Global wrote Check # 70194 in the amount of $17,289.89, payable to Gemmel dated July 8, 2002. The check was paid or honored on July 16, 2002. Neither Diamond nor Gemmel dispute that the check was a "transfer" of funds belonging to Inland Global within the meaning of the Bankruptcy Code and other applicable laws. Nor do the parties dispute that (a) the subject transfer was made for or on account of an antecedent debt owed by Inland Global to Gemmel before such transfer was made; (b) the subject transfer was made within 90 days before October 4, 2002—the date the involuntary petition was filed against Inland Global, and (c) the subject transfer enabled Gemmel to receive more than it would have received if the case were a case under chapter 7, the subject transfer had not been made, and Gemmel had received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

In support of its affirmative defenses, Gemmel's vice president, Barry Vantiger ("Vantiger"), who is responsible for Gemmel's billing and accounts receivable, testified that Gemmel rendered medical services to Inland Global patients on a "fee for service" basis through 2002 pursuant to a written agreement entered into between the parties in 2001. A copy of the agreement was not introduced into evidence. Vantiger testified that he was unable after due diligence to locate a copy of the agreement. According to Vantiger, Gemmel rendered medical services for the benefit of Inland Global patients on a "fee for service" basis from July 16, 2002 to October 4, 2002, pursuant to its agreement with Inland Global, as evidenced by Exhibits A–1 through A–10. Inland Global was billed the sum of $8,812.88 for such services, and Gemmel "never received compensation for these services from Inland Global or any other person."

## II. DISCUSSION

The court finds that it has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is appropriate in this court under 28 U.S.C. § 1409(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

### A. *Contentions of the Parties.*

The parties do not dispute that the subject transfer constitutes a preferential transfer by Inland Global to Gemmel of $17,289.89 pursuant to § 547(b). Plaintiff claims that he is entitled to recover the sum of $17,289.89 from Gemmel pursuant to § 547(b), together with prejudgment interest and costs of court. Gemmel claims that it provided services on behalf of Inland Global after the subject transfer which constituted "new value" under § 547(c)(4) in the amount of $8,812.88, and that such new value provides a partial defense to Diamond's preference claim. Additionally, Gemmel claims an affirmative defense under § 547(c)(2), arguing that the transfer was in payment of a debt incurred by the debtor in the ordinary course of business, made in the ordinary course of business, and according to ordinary business terms.

### B. *New Value.*

Section 547(c)(4) states that the trustee may not avoid under § 547 a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise un-

avoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). To prevail with the new value defense, Gemmel must show (a) that it gave unsecured new value to or for the benefit of the debtor; (b) after the preferential transfer; and (c) the debtor did not repay the new value by an otherwise unavoidable transfer. *Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.),* 52 F.3d 228, 231 (9th Cir.1995). "The 'new value' defense is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors." *Rodgers v. Schneider (In re Laguna Beach Motors, Inc.),* 148 B.R. 322, 324 (9th Cir.BAP1992), *quoting In re Auto–Train Corp.,* 49 B.R. 605, 612 (D.D.C.1985), *aff'd sub nom., Drabkin v. A.I. Credit Corp.,* 800 F.2d 1153 (D.C.Cir.1986).

In this case, Vantiger testified that after receiving Check # 70194, Gemmel continued to provide medical services to Inland Global patients on a "fee for service" basis pursuant to its agreement with Inland Global. The invoices admitted as Exhibits A–1 through A–10 show that Gemmel's services were rendered to two Inland Global patients, Robert Davidson and Gloria Lewis, between July 23, 2002 and September 30, 2002. Exhibits A–1 through A–10 identify the (a) name and patient number of the Inland Global patient receiving the service; (b) medical record number; (c) date of service; (d) nature of service performed; (e) payer and provider number; (f) a treatment authorization code, and (g) the total charge for the service. Vantiger testified that Gemmel did not receive compensation for the services described in Exhibits A–1 through A–10 from Inland Global or any other person.

 The defendant in a preferential transfer proceeding has the burden of proving any exceptions to avoidance under § 547(c). 11 U.S.C. § 547(g). *See Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.),* 184 B.R. 74, 75 (9th Cir.BAP1995). With respect to § 547(c)(4), creditors have the burden of establishing *with specificity* the measure of new value given to the debtor in the exchange. *See, e.g., Official Unsecured Creditors' Comm. v. Airport Aviation Servs., Inc. (In re Arrow Air. Inc.),* 940 F.2d 1463, 1466 (11th Cir.1991); *Creditors' Comm. v. Spada (In re Spada),* 903 F.2d 971, 976 (3rd Cir.1990); *Jet Florida, Inc. v. Am. Airlines, Inc. (In re Jet Florida Sys., Inc.),* 861 F.2d 1555, 1559 (11th Cir. 1988). Creditors relying on § 547(c)(4) must also prove that the new value has not been repaid by an otherwise unavoidable transfer. *See IRFM,* 52 F.3d at 231; *Nat'l Lumber,* 184 B.R. at 81. Because Gemmel has established with specificity new value given to Inland Global and that such new value was not repaid by an otherwise unavoidable transfer, Gemmel is entitled to a new value defense in the amount of $8,812.88 against Diamond's preference claim.

## C. *Ordinary Course of Business.*

 Under § 547(c)(2), a trustee may not avoid an otherwise preferential transfer to or for the benefit of a creditor to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee, and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). Section 547(c)(2) is comprised of a subjective test and an objective test. *See Cocolat, Inc. v. Fisher*

*Dev., Inc. (In re Cocolat, Inc.)*, 176 B.R. 540, 549 (Bankr.N.D.Cal.1995). The transferee has the burden of proving the defense and must prove each of the three elements by a preponderance of the evidence. *Arrow Elec., Inc. v. Justus (In re Kaypro)*, 230 B.R. 400, 404 (9th Cir. BAP1999), *aff'd in part, rev'd in part*, 218 F.3d 1070 (9th Cir.2000).

▪ Sections 547(c)(2)(A) & (B), which together form the subjective test, require a creditor to demonstrate that the debt and its payment are ordinary in relation to past practices or a prior course of dealing between the debtor and the creditor. *See, e.g., Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.)*, 25 F.3d 728, 732 (9th Cir. 1994); *Bell Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.)*, 107 B.R. 707, 709 (9th Cir. BAP 1989); *Cocolat*, 176 B.R. at 549.

▪ Section 547(c)(2)(A) focuses on whether the incurrence of debt was ordinary, *i.e.*, whether the debt was incurred by the debtor in the ordinary course of business. *See Cocolat*, 176 B.R. at 549. Section 547(c)(2)(B) requires the court to examine the following factors to determine if payment of the debt was ordinary in light of past practices between debtor and creditor: (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition. *See Grand Chevrolet*, 25 F.3d at 732; *Cocolat, Inc.*, 176 B.R. at 549.

▪ Section 547(c)(2)(C)'s objective test requires a creditor to prove that the payment was ordinary in relation to prevailing business standards. *See, e.g., Bank of the West v. Anderson (In re Jan Weilert RV, Inc.)*, 315 F.3d 1192, 1197 (9th

Cir.2003); *In re Food Catering & Housing, Inc.*, 971 F.2d 396, 398 (9th Cir.1992). In other words, § 547(c)(2)(C)'s objective standard requires proof of "practices common to businesses similarly situated to the debtor and the transferee." *Loretto Winery*, 107 B.R. at 709. It is not enough to prove what past practices were between the particular creditor and the debtor. *Id.* The focus of the inquiry is whether the payment practice at issue comports with industry standards. *See Jan Weilert*, 315 F.3d at 1197. According to the Ninth Circuit:

> [T]he creditor must show that the payment he received was made in accordance with the ordinary business terms in the industry. But this does not mean that the creditor must establish the existence of some single, uniform set of business terms . . . . We conclude that "ordinary business terms" refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of [the ordinary course of business].

*Id., quoting In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir.1993). Section 547(c)(2)(C)'s objective test requires consideration of both the creditor's and the debtor's industries, *i.e.*, "the *broad range* of terms that encompasses the practices employed by those debtors and creditors, including terms that are ordinary for those under financial distress." *Jan Weilert*, 315 F.3d at 1198 (citations omitted).

▪ In this case, Gemmel's ordinary course defense is based primarily upon the following testimony from Vantiger:

> Over the course of our contractual relationship, Inland Global was consis-

tently late on payments. Inland Global ordinarily paid for services 120 days after they were rendered. Several other insurers and governmental aid programs also did not ordinarily keep their accounts current and late payments on services rendered was a common practice. For example, during the same time period, Medicare, a federal medical aid program, had balances due in the 120–180 day categories. In addition, MediCal, the state medical aid program likewise had balances in the 120–180 day categories.

Viewing the evidence in a light most favorable to Gemmel, the court finds that Gemmel failed to sustain its burden to establish that the transfer was made in the ordinary course of business and made according to ordinary business terms.

With respect to § 547(c)(2)(B), Gemmel failed to submit any billing records or a billing history concerning medical services rendered on behalf of Inland Global to show the length of time the parties were engaged in the transactions and that the amount or form of tender did not differ from past practices. Nor did Gemmel introduce evidence to establish that neither Inland Global nor Gemmel engaged in any unusual collection or payment activity. Even assuming Gemmel satisfied the subjective test of § 547(c)(2)(A) & (B), there is little credible evidence that the payments were ordinary in relation to prevailing business standards. The fact that two government aid programs were unable to keep their accounts current with Gemmel does not satisfy Gemmel's burden to establish that Inland Global's payments to Gemmel comported with industry standards. Gemmel did not offer any expert testimony concerning the credit arrangements between other similarly situated debtors and creditors in the industry nor any expert opinion as to whether Inland Global's payment practices were consistent with what takes place in the industry. *See In re Hessco Indus., Inc.,* 295 B.R. 372, 376 (9th Cir.BAP2003) (stating that *Jan Weilert's* considerable relaxation of the burden on preference defendants in proving their affirmative defenses under § 547(c)(2)(C) ... [does] not relieve them of the requirement to proffer *some* evidence to sustain that burden). Based on the foregoing, the court finds that Gemmel is not entitled to an ordinary course defense against Diamond's preference claim.

### CONCLUSION

For the foregoing reasons, the court will enter judgment awarding the sum of $8,477.01 to Diamond pursuant to § 547(b), together with prejudgment interest from December 22, 2004, to entry of judgment, and costs of court. A separate judgment will be entered consistent with this opinion.